# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 1, 2011

## STATE OF TENNESSEE v. MICHAEL HARRIS AND EDDIE HARRIS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-01012     W. Mark Ward, Judge**

**No. W2010-00693-CCA-R3-CD  - Filed July 18, 2011**

A Shelby County Criminal Court jury convicted the appellants, Michael Harris and Eddie Harris, of aggravated robbery, and the trial court sentenced them to nine years in confinement. On appeal, they contend that the evidence is insufficient to support their convictions. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JERRY L. SMITH, and ALAN E. GLENN, JJ., joined.

Edwin C. Lenow (at trial and on appeal), Memphis, Tennessee, for the appellant, Michael Harris, and Tony N. Brayton (on appeal) and Michael Johnson (at trial), Memphis, Tennessee, for the appellant, Eddie Harris.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; William L. Gibbons, District Attorney General; and Greg Gilbert and Neal Oldham, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

At trial, fifty-year-old Louis Alexander, the victim, testified that about 1:30 p.m. on July 28, 2008, he went to the Ace Cash Express at the corner of Kimball Avenue and Getwell Road in Memphis. The victim had over four hundred dollars with him and went to the store to make a credit card payment. When he got inside, he saw that a lot of people were waiting

in line, so he decided to go to one of the store's other locations. He walked out the front door and toward his truck, which was parked in front of the business. He noticed two men behind him. The men walked passed him, and the victim became suspicious. He said that he tried to get to his truck, that one of the men pointed a gun at him, and that he heard, "Give me the money." The victim said he was "[a] little scared." He thought the men wanted his truck and threw his keys onto the ground. While one man pointed the gun at the victim, the second man put his hand into the victim's left pants pocket. The victim said that "I did struggle with him a little bit" but that the man took over four hundred dollars, a lottery ticket, and his driver's license out of his pocket. The men ran north on Getwell Road toward Philsdale Avenue. In court, the victim identified Eddie Harris as the man with the gun and Michael Harris as the man who reached into his pocket.

The victim testified that someone telephoned the police. When a police officer arrived, the victim gave the officer a description of the robbers. He said that both of the men were wearing white shirts, black pants, and white baseball caps. Later that day, the victim went to the police department, spoke with a detective, and signed a form titled "Memphis Police Department Advice to Witness Viewing Photographic Display." He said that he did not remember if he read the form or if someone read it to him and that he signed the form. In the first six-photograph array, the victim picked out Eddie Harris' photograph and identified him as the gunman. In a second six-photograph array, the victim circled the first photograph and identified the man as the man who reached into his pocket. However, the detective told the victim that the victim was wrong and showed the victim a third six-photograph array. In the third array, the victim picked out Michael Harris' photograph and identified him as the man who reached into his pocket. He also identified the appellants at the preliminary hearing. He said he identified them at the hearing from his memory of the robbery, not the arrays. He said that the gun looked like a .380 caliber handgun and that it was black with a silver barrel.

On cross-examination, the victim testified that he did not talk with the prosecutor before trial "except for just conversations on the phone telling me when to be in court." He acknowledged that he testified at the appellants' preliminary hearing. He said he did not remember saying at the hearing that the detective showed him four nine-photograph arrays. He said that the detective showed him three six-photograph arrays and that he probably was mistaken at the hearing. He acknowledged that just before he testified at the preliminary hearing, he looked again at the arrays containing the appellants' photographs. The victim said that he thought both of the robbers had goatees but that he did not remember if he told the police the robbers had facial hair. He acknowledged that he gave a statement to police and that he did not mention facial hair in his statement. He also acknowledged that none of the photographs in the three arrays showed men with goatees. He said that the robbery took no more than three minutes and that the robber who reached into his pocket "definitely had

-2-

a goatee." He acknowledged that in his statement to police, he said the robbers were wearing shorts, not pants. He said that although the detective told him that his selection in the second array was incorrect, the detective did not influence him to identify Michael Harris in the third array. He said he thought he had identified the right man from the second array "[u]ntil I looked at [the third array] and I knew I was wrong." He said that he had never seen the robbers prior to July 28, 2008, and that his money, lottery ticket, and driver's license were never returned to him. He said that during the robbery, he was looking at the gun and the man reaching into his pocket.

On redirect examination, the appellant again identified Eddie Harris in court as the man with the gun and Michael Harris as the man who reached into his pocket. The State asked that the trial court allow each appellant to walk toward the victim and that the victim show the jury how close each appellant got to him on the day of the robbery. The trial court allowed the demonstration. Eddie Harris walked toward the victim first, and the victim stopped him when the appellant got eight to ten feet away from the victim. The State asked the victim how sure he was that Eddie Harris was one of the robbers, and the victim said, "That's the person." Then Michael Harris walked toward the victim, and the victim stopped him when the appellant got one to two feet away from the victim. The State asked the victim how sure he was that Michael Harris was one of the robbers, and the victim said, "That's the person."

Officer K. A. Woods of the Memphis Police Department testified that on July 28, 2008, he responded to a call at the Ace Cash Express. He arrived at the scene about 2:00 p.m. and spoke with the victim. The victim described the robbers, and Officer Woods broadcast information about the robbery over the police radio. About 2:45 p.m., he heard the appellants were in custody.

On cross-examination, Officer Woods testified that he did not remember the victim's saying the robbers had goatees. He said that he took notes at the scene but that he no longer had them because he threw his notepad away. On redirect examination, Officer Woods testified that after he entered the information from his notes into the computer for the detectives at the robbery bureau, he did not think he needed to keep his notes.

Michael Powell testified that he was a retired criminal investigator for the Tennessee Bureau of Investigation, lived on Philsdale Avenue, and could see Getwell Road from his house. About 1:00 or 1:30 p.m. on July 28, 2008, Powell was outside washing his truck and noticed a dark blue Saturn parked in front of his house. He said that he had never seen the car before and that the "hood was up for a minute and then it was back down again." Powell began watching the car and saw an African-American male sitting in the driver's seat. Powell said that a few minutes later, he "heard these guys running past me to get in it real quiet."

The males got into the car, and the car drove away. He said that he did not see the males' faces but that they were African-American and were wearing shirts and baggy shorts. Powell was suspicious and wrote down the car's license tag number. Later, he heard police sirens on Getwell Road. He flagged down a police officer and gave him the Saturn's license tag number, "284 SXB."

On cross-examination, Powell testified that the Saturn was a two-door hatchback. He did not see anything in the males' hands and did not see a gun. He acknowledged that he told the police the males appeared to be in their mid-teens, fifteen to sixteen years old.

Officer Tim Henderson of the Memphis Police Department testified that he responded to the scene of the robbery. Officer Woods was already present, so Officer Henderson began patrolling the area, looking for the suspects. He was in a neighborhood one block north of the robbery when a man flagged him down and gave him a card with a car's license tag number written on it. The man also described the car to Officer Henderson. The tag number and the car description were broadcast over the police radio.

Officer Timothy Brown of the Memphis Police Department testified that about 2:15 p.m. on July 28, 2008, he stopped a blue Saturn that matched the description announced over the radio. Three African-American males were in the car; the two passengers were the appellants. Officer Henderson saw a handgun on the front passenger floorboard and arrested the three males. On cross-examination, Officer Brown identified a photograph of the Saturn. He acknowledged that the car had four doors and was not a hatchback.

Investigator Marlon Wright of the Memphis Police Department testified that on July 28, 2008, he went to the Exxon gas station at the corner of Elvis Presley Boulevard and Shelby Drive. He talked with Officer Brown and photographed a blue Saturn Officer Brown had stopped. He identified a photograph of the Saturn, showing that its license tag number was "284 SXB." He also collected a gun from the front passenger floorboard. He said that the gun was loaded with one live round in the chamber and three .380 caliber bullets in the magazine. He had the gun chemically processed for fingerprints but was never notified that identifiable prints were found. On cross-examination, Investigator Wright testified that he collected the evidence in this case and that no money, driver's license, or lottery ticket were turned over to him.

Detective Gary Badgett of the Memphis Police Department testified that on July 28, 2008, he worked for the robbery bureau and took the victim's formal written statement. Detective Badgett was aware that three suspects had been arrested but that the victim had reported only two robbers. Detective Badgett put together three six-photograph arrays and had the victim read and sign a Memphis Police Department Advice to Witness Viewing

-4-

Photographic Display form. Detective Badgett showed the victim the first array, and the victim identified Eddie Harris' photograph. Detective Badgett said he told the victim to "write down what exactly this particular suspect did during the incident." On the bottom of the array, the victim wrote that Eddie Harris was the gunman. Detective Badgett then showed the second array to the victim. He said that the victim "circled this individual and he wasn't exactly sure." Detective Badgett said that because the victim was not positive about the identification, he told the victim, "[D]on't write anything unless you're sure that this is the suspect in the crime." The victim did not write anything on the bottom of the array.

On cross-examination, Detective Badgett testified that he did not remember being at the appellants' preliminary hearing or showing the victim the photograph arrays before the victim testified at the hearing. He said, "Normally, we don't do that during a preliminary hearing." He acknowledged that he was trained on showing photograph arrays to victims and that the victim circled and initialed the first photograph in the second array. However, he said the victim did not make a "complete identification" because the victim did not write anything on the array about what the suspect did during the robbery. He denied telling the victim after the victim circled and initialed the photograph in the second array that the victim was wrong. He said that he showed the victim the third array and that the victim made a complete identification of the second suspect, Michael Harris.

Kevin Dandridge testified that he owned a blue Saturn. On July 28, 2008, he picked up the Harris brothers, who were his friends. He said they "didn't have no plans, really, just, you know, kicking." Dandridge drove around for awhile, and the appellants told him they were going to a store. Dandridge parked his car on a residential street, the appellants got out, and the appellants walked toward Getwell Road. Dandridge said the store was on Getwell Road but that he did not know where. He said he did not know why he did not park his car at the store. Dandridge sat in his car and waited on the appellants, and he could not see the store from where he was parked. He said that the appellants were gone about five minutes, that they were counting money when they returned, and that Michael Harris was holding a gun. He said the appellants told him that they "hit a lick," meaning they committed a robbery. Dandridge said he did not know the appellants were going to commit a robbery when he parked on the street.

Dandridge testified that Michael Harris sat in the front passenger seat and put the gun on the floorboard. Eddie Harris got into the backseat. Dandridge drove around for about twenty minutes until a police officer pulled him over. The officer arrested him and the appellants, and Dandridge gave a statement to the police. He said that from the time he drove away from Getwell Road until the police officer pulled him over, the appellants did not get out of the car and he did not stop anywhere.

On cross-examination, Dandridge testified that he picked up the appellants from their mother's house. He acknowledged that in his statement to the police, he said he picked them up from their father's house. He said he was mistaken in his statement. He said that while he was parked and waiting for the appellants to return, he never got out of the car and never put the hood up. He said he did not remember anyone throwing anything out of the car window.

Judge Lee Wilson testified for Eddie Harris that he was a judge in the general sessions criminal court. Prior to being a judge, he was a criminal defense lawyer and represented Michael Harris at the preliminary hearing in this case. He said that at the hearing, Michael Harris was identified as the gunman. On cross-examination, Judge Wilson acknowledged that the appellants were identified by numbers, not names, at the hearing. On redirect examination, Judge Wilson testified that he was sure Michael Harris was identified as the gunman. The jury convicted the appellants of aggravated robbery, a Class B felony. After separate sentencing hearings, the trial court sentenced them to nine years.

## II. Analysis

The appellants contend that the evidence is insufficient to support their convictions. Specifically, Michael Harris argues that the victim's identification of the appellants is suspect because the victim never told the police that the robbers had facial hair, misidentified one of the robbers in the second photograph array, and was allowed to look at the arrays just before the victim testified at the preliminary hearing. He also argues that Detective Badgett's telling the victim that the victim was incorrect when the victim identified a suspect from the second array resulted in a "suggestive procedure." Similarly, Eddie Harris argues that the evidence is insufficient to support his conviction because eyewitness identification is inherently untrustworthy, Officer Badgett told the victim that he had misidentified one of the robbers, and Officer Badgett showed the photograph arrays to the victim before the victim testified at the preliminary hearing. The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. See State v. Bland, 958

S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. See id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

As charged in the indictment, aggravated robbery is defined as robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." See Tenn. Code Ann. § 39-13-402(a)(1). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). The trial court instructed the jury on criminal responsibility. A defendant is criminally responsible for an offense committed by another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the [defendant] solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2).

Initially, we note that to the extent the appellants are arguing that the victim's identification of them was unduly suggestive, and, therefore, inherently unreliable as explained in Neil v. Biggers, 409 U.S. 188, 198-99 (1972), the State argues that this issue has been waived because the appellants failed to file a motion to suppress the victim's in-court and out-of-court identifications. See Tenn. R. Crim. P. 12(b)(2). Our review of the record shows that the appellants filed a pretrial motion to suppress the victim's identifications on the basis that the victim "was shown the individual pictures of the Defendants by a detective prior to the testimony at the preliminary hearing." However, the disposition of the motion or a transcript of any suppression hearing is not in the appellate record. Therefore, we agree with the State that the issue has been waived. See Tenn. R. App. P. 36(a), (b).

Taken in the light most favorable to the State, the evidence shows that on the afternoon of July 28, 2008, Kevin Dandridge and the appellants parked in front of Michael Powell's house on Philsdale Avenue. While Dandridge waited in the car, the appellants walked to the nearby Ace Cash Express on Getwell Road. They went into the store, followed the victim outside, and stopped the victim at his truck. While Eddie Harris pointed a gun at the victim, Michael Harris put his hand into the victim's pants pocket and took the victim's money, lottery ticket, and driver's license. Then the appellants ran back to Philsdale Avenue and got into Dandridge's car. Dandridge said that the appellants were counting money, that Michael Harris had a gun, and that Harris put the gun on the front floorboard. Powell recorded Dandridge's license tag number and gave it to Officer Henderson. Shortly thereafter, Officer Brown stopped Dandridge's car, arrested the appellants, and found the gun

on the floorboard. The jury, not this court, determines the credibility of the witnesses and the weight and value to be given their testimony. The jury heard and assessed the victim's testimony and determined that his identifications of the appellants were credible and reliable. In any event, the jury could reasonably conclude from Dandridge's testimony that the appellants robbed the victim. The evidence is sufficient to support the convictions.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.


_____
NORMA McGEE OGLE, JUDGE